IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)
Case No. 20-cv-23826-Civ-COOKE/GOODMAN

AMY D. SHIVER,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA,

    Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, AMY D. SHIVER, hereby files her response to Defendant's Motion for Summary Judgment [ECF No. 48], filed May 1, 2021. For the following reasons, Defendant's Motion for Summary Judgment should be DENIED, and Plaintiff's Renewed Motion for Summary Judgment [ECF No. 31], filed February 10, 2021 should be GRANTED as to Counts I and II of the Complaint.

**Plaintiff's Response to Motion for Summary Judgment**

In a mere four pages of argument, and without the testimony of a single witness other than Plaintiff herself, Defendant seeks summary judgment on Plaintiff's FMLA claims in this case. Defendant's Motion for Summary Judgment should be denied because it is little more than a re-argument of the same points that were included in Defendant's prior four-page Response in Opposition to Plaintiff's Motion for Final Summary Judgment [ECF No. 42] filed April 10, 2021 ("Def. Summary Judgment Response"). The only significant difference between the current motion and the prior response is that Defendant now appears to concede that Plaintiff was qualified for more than 400 hours of FMLA that Defendant admits granting to Plaintiff in 2019 and 2020. Otherwise, more than twenty of the 61 paragraphs in Defendant's Statement of Material Facts [ECF No. 47] were

1

lifted verbatim from the Statement of Facts [ECF No. 41] submitted April 10, 2020, and the remaining "new" paragraphs are entirely based on the documentary record that existed on April 10, 2021, since no additional discovery has been conducted since then.

It is also notable that although SHIVER submitted her own unsworn declaration in support of her claims, Defendant has chosen not to submit any testimony from Plaintiff's supervisors or any other witness to explain how her FMLA leave was tracked or designated, or to explain why, even after her FMLA was approved, it was still considered as a negative factor in SHIVER's progressive discipline and suspension without pay for excessive absenteeism. Without such testimonial evidence, Defendant's second bite at the apple falls far short of meeting its heavy burden under Rule 56 to show an absence of material fact on Plaintiff's FMLA interference or retaliation claims in this case. This is especially true in light of Defendant's admissions of record – discussed at length in Plaintiff's Renewed Motion for Summary Judgment -- that Plaintiff's FMLA protected absences were the motivating, if not sole, reason that she was disciplined in writing on two occasions and ultimately suspended without pay for a week in 2020 for "excessive absenteeism."

Based on the undisputed evidence in this case, it is clear that Plaintiff's supervisors were unaware of, or simply disregarded, their obligations and responsibilities under the FMLA and the Code of Federal Regulations in this case, as well as the County's own FMLA policies and rules for recording FMLA leave in Plaintiff's official time records. After Defendant initially approved her FMLA request in November 2019, Plaintiff's supervisors interfered with her FMLA rights by failing to timely or accurately designate the FMLA leave that was taken and approved via an informal system of phone calls and text messages, and then retaliated by disciplining her for FMLA-protected absences that were subjectively determined *post hoc* to have hindered the operations of the office. By their actions in this case, Plaintiff's supervisors attempted to impose their own attendance policies and

notice requirements that diminished and interfered with the rights guaranteed to SHIVER under the FMLA. Accordingly, Plaintiff should be granted summary judgment on her FMLA claims for interference and retaliation. *See, e.g., Langlois v. City of Deerfield Beach*, 370 F. Supp. 2d 1233, 1239 (S.D. Fla. 2005) (granting summary judgment for employee on FMLA interference claim and noting that "[t]he City's reliance on its internal policies fail, because, as a matter of law, an employer cannot develop internal policies that circumvent the rights guaranteed its employees under the FMLA").

## ARGUMENT

**Defendant now admits that Plaintiff was qualified and eligible for FMLA leave**

In its prior summary judgment response, Defendant argued that Plaintiff cannot establish that she was eligible for any FMLA leave in 2020. In its Motion for Summary Judgment filed twenty days later, Defendant now concedes that "[t]here is no dispute that Shiver was approved for FMLA leave when her doctors finally completed the leave form." The leave forms to which Defendant refers are WH-380 Forms from SHIVER's health care providers, each of which described the nature of her serious health condition and notified Defendant of Plaintiff's need to take both scheduled leave for her health-care appointments and intermittent leave when her gastrointestinal issues became incapacitating and prevented her from working. Because Defendant now apparently agrees that Plaintiff was eligible for and received FMLA benefits (as shown by its own prior approvals and the undisputed factual record of her serious gastrointestinal issues and continuing treatment by her health care providers) the only remaining issues to be considered are whether Defendant can show that there are no disputed facts to support the interference or retaliation claims, and that it would have made the same decision to suspend Shiver's employment without regard to her FMLA leave.

**Plaintiff's FMLA interference claim**

To establish her FMLA interference claim, SHIVER must show that: (1) she was an eligible employee; (2) MIAMI-DADE COUNTY was an eligible employer; (3) Defendant knew or should have known that her leave was for a FMLA qualifying reason and (4) Defendant denied her FMLA benefits to which she was entitled.  *See Wahl v. Seacoast Banking Corp. of Fla.*, 2011 U.S. Dist. Lexis 24115, at *26-*27 (S.D. Fla. March 9, 2011).

Defendant's two-paragraph argument for summary judgment on Plaintiff's interference claim includes no new arguments or even any citations to any record facts or evidence.  *See* Def. Motion for Summary Judgment [ECF No. 48], at 3.  It asserts in conclusory fashion that the interference claim is "not supported by the law or facts" but it fails to point to any law or facts cited or relied on by Plaintiff that are erroneous, inapplicable or unsupported.  Defendant has also failed to submit any witness affidavits or other sworn testimony in support of its position, either now or in support of its prior summary judgment response.  Instead, it simply concludes that "Shiver was never denied FMLA leave" – which SHIVER has already clarified she agrees with and is not even part of the interference claim -- and that she "is not entitled to any relief because she cannot demonstrate that she was prejudiced by being approved for leave anytime she texted FMLA."  *Id*.

Plaintiff has already demonstrated at length in her Amended Motion for Summary Judgment how Defendant's *ad hoc* retroactive summary of 461.25 hours of FMLA leave in July 2020 – not one hour of which was properly recorded as FMLA time in her County EPAR time records -- violated her rights to timely designation and notice under the FMLA and resulted in SHIVER being unjustly threatened with termination at the end of July 2020 if her "excessive absenteeism" continued.  *See* ECF No. 31, at 8-10.  Her undisputed testimony and documents submitted to the Court further establish that prior to the five-day unpaid suspension she consistently followed the instructions that

4

she was given to notify her supervisor of intermittent leave and submitted dozens of notes for scheduled doctor's appointments in 2019 and 2020 without any written notice within five days as whether her leave requests were specifically approved, how many hours were actually designated as FMLA in her County time or how much FMLA leave she had remaining for the year, as required by the requirements of 29 C.F.R. § 825.300(d)(1), (4) and (6).   Instead, when she returned from her five-day unpaid suspension at the end of July 2020, she was presented with an *ad hoc* summary that retroactively designated 461.25 hours of FMLA leave she had allegedly taken over a seven-month period since January 2020 and showed that SHIVER's April 28, 2020 second DAR for "excessive absenteeism" was based on three days of approved intermittent leave that she had taken on April 13, 14 and 15, 2020.

Despite the substantial and undisputed evidence of interference with Plaintiff's FMLA rights in this case and resulting prejudice, Defendant has offered this Court no explanation whatsoever as to why Plaintiff's supervisors waited seven months before finally informing her for the first time in July 2020 (coupled with an open threat of termination) that she had used 461.25 hours of FMLA for the year.  Nor has Defendant offered any justification for admittedly considering FMLA-protected absences as a "negative factor" and grounds for progressive discipline and threats of termination, despite the clear proscription of 29 C.F.R. § 825.220(b) and (c) that forbid such actions by employers. Unlike a retaliation claim, the intent of the employer is not relevant to an FMLA interference claim. *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008).  Therefore, regardless of whether there is evidence that FMLA leave was the "sole" factor that supported the five-day suspension for "excessive absenteeism," Defendant's admission that FMLA-protected absences played **any** role in the decision still constitutes *per se* interference under the FMLA. *See* 29 C.F.R.

825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act").

In sum, Defendant's Motion for Summary Judgment [ECF No. 48] on Plaintiff's FMLA interference claim in this case should be DENIED, and Plaintiff's Amended Motion for Summary Judgment [ECF No. 31] should be GRANTED, because the undisputed material facts, record evidence and testimony establish that:

(a) after approving SHIVER's entitlement to FMLA leave in November 2019, Defendant failed to timely notify Plaintiff when her time off was designated as FMLA or "the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement" (as required by 29 C.F.R. §§ 825.300(d));

(b) Defendant used the taking of FMLA leave as a negative factor to progressively discipline and ultimately suspend Plaintiff without pay for five-days in July 2020 (in violation of 29 C.F.R. § 825.220(c)) and

(c) When Plaintiff returned to work from her unpaid suspension, Defendant made an improper retroactive designation of over 461.5 hours of FMLA leave on July 24, 2020 which was used to threaten SHIVER with termination if she used more than 19.5 hours of FMLA leave in the remaining four months of 2020.

### Plaintiff's FMLA retaliation claim

Like its argument on the interference clam, Defendant's four-paragraph argument for summary judgment on Plaintiff's FMLA retaliation claim simply rehashes the same points that it previously raised under Rule 56 as the non-moving party in response to Plaintiff's Amended Motion for Summary Judgment, and is not supported by the testimony of a single witness or any new evidence

to meet its even higher burden under Rule 56 as the moving party to show an absence of material fact as to any of Plaintiff's claims.

Defendant first argues that no causal connection can be shown between Plaintiff's formal request for FMLA request on October 2019 and the DAR issued nearly six months later in April 2020, but this analysis overlooks and fails to address the much closer temporal proximity between SHIVER's approved requests for intermittent FMLA leave on April 13, 14 and 15, 2020 – which constitute protected activity under the FMLA separate and apart from the submission of the WH-365 Form on October 31, 2019 -- and the DAR issued to SHIVER approximately two-weeks later for "excessive absenteeism." This is an extremely close temporal proximity under the Eleventh Circuit's standards for retaliation cases, which even Defendant admits is supported by undisputed evidence, and should be more than sufficient under Rule 56 to support a strong inference of causation.

Even if SHIVER's first Record of Counseling for "excessive absenteeism" on September 24, 2019 predated her WH-380 form by several weeks, it is also undisputed (and Defendant has again admitted) the ROC was based on absences for the same serious health condition that Defendant now admits supported the FMLA request. There is also substantial record evidence that Plaintiff's chronic gastrointestinal issues arose during the summer of 2019 after a course of antibiotics that were prescribed by her doctors following her exposure to meningitis at work. Her specific condition went undiagnosed for several months until she was hospitalized in October 2019 but even during this time, Defendant's records reflect that she frequently mentioned "FMLA" in connection with her leave requests. Given Defendant's longstanding and undisputed knowledge of SHIVER's condition and her efforts to obtain a diagnosis and treatment, the mere fact that Plaintiff happened to submit her formal FMLA request several weeks after the ROC does not support, let alone compel, the conclusion that SHIVER's initial discipline for "excessive absenteeism" was legitimate or unrelated to its

knowledge of her serious medical condition and her requests (albeit informal at that point) for potential FMLA-qualifying leave.  Nor does it diminish the fact that the ROC was the first step of the progressive disciplinary process that resulted in and supported the imposition of the five-day suspension imposed in connection with the DAR issued seven months later in April 2020.

Additional support for a causal connection in this case can be found in the DAR issued January 22, 2020 for "excessive absenteeism."  This narrative section of this DAR accused SHIVER of working only 42.65 hours out of 68 "possible hours" during the preceding pay period that ended January 12, 2020, at a time when she had not accrued sufficient leave to cover the absences as paid time off.  Although Ms. Garner does not identify the specific dates to which she refers, a review of Defendant's summary of FMLA hours [ECF No. 20-13] shows that Plaintiff was granted 16.0 hours of FMLA on January 8 and 9, 2020 and another 4.75 hours on January 10, 2020, which means that FMLA leave was granted for at least 20.75 of the 25.35 hours to which the DAR refers.  Plaintiff was also approved for 8.0 hours of FMLA on January 13, 2020 and an additional 8.0 hours on January 21, 2020, the day before Latisha Garner issued the DAR.  The DAR also warns Plaintiff that because she had already received a Record of Counseling for attendance on September 24, 2019, any future instances of "excessive absenteeism" would result in a suspension under Defendant's progressive discipline policies, which, not coincidentally, is exactly what happened just over three months later when SHIVER received  her *third* disciplinary action for attendance issues based in whole or in part on FMLA-protected absences, and Ms. Garner made good on her threat to suspend SHIVER for five days without pay.

Defendant further argues that, even if a causal connection is proven, SHIVER cannot show that its proffered legitimate reasons for the DAR and five-day suspension – that "she was insubordinate and . . . continued to be tardy to work and to be absent without providing

8

documentation" -- are a pretext for retaliation. Plaintiff has previously argued that the Court need not engage in any pretext analysis in light of Defendant's admission that the five-day suspension was for FMLA protected absences. *See* ECF No. 31, at 11-16. However, even if burden shifting is applied, there is no record evidence in this case to support even Defendant's exceedingly light burden to proffer a non-retaliatory reason for the suspension, and even if there was, Defendant's own admissions and documents create a disputed issue as to Ms. Garner's true motive and whether her actions violated the FMLA.

Although the DAR issued April 28, 2020 admittedly includes a second insubordination charge, the DAR issued January 22, 2020 confirms that it was the "third strike" for "excessive absenteeism" that resulted in the increased punishment of the five-day unpaid suspension. By contrast, the first Record of Counseling for Insubordination issued December 13, 2019 makes no such reference to a suspension or loss of pay for a future infraction. In the absence of sworn testimony to the contrary, these documents support the conclusion that under Ms. Garner's interpretation of Defendant's progressive disciplinary policies, the five-day suspension resulting from the April 28, 202 DAR was an enhanced punishment for the "excessive absenteeism charge," and that the second offense of insubordination would only have supported a DAR with a no suspension.

Defendant's other proffered legitimate reason for DAR -- that SHIVER was "absent without documentation" -- also finds no support in the record facts of this case and is not supported by the testimony of a single witness. Defendant has submitted no evidence as to the dates referred to or why such documentation was even required by Ms. Garner after SHIVER had already been approved for intermittent FMLA and her doctors had advised Defendant that there would likely be occasions (typically in the morning) when she woke up and was simply unable to perform her duties in the mortuary due to severe pain and nausea from her gastrointestinal issues and her medications. Because

9

the DAR narrative does not identify a single specific day when Plaintiff allegedly failed to provide documentation for any of the time off that appears on her leave records, and the FMLA itself does not expressly require an employee to obtain or provide any such proof for each instance of unforeseeable intermittent leave, Plaintiff's alleged lack of documentation cannot provide a legitimate non-retaliatory reason for the DAR and five-day suspension in this case.

Finally, Defendant argues that retaliatory intent cannot be established in this case because none of SHIVER's supervisors made negative comments about her application for FMLA or her FMLA leave requests. While this may be true, such negative comments or stated opposition to an employee's initial FMLA request are not required to prove FMLA retaliation, especially where, as here, Defendant's own admissions and documents belie any dispute that SHIVER was disciplined and suspended without pay by her supervisor Latishia Garner for FMLA-protected absences that Ms. Garner herself had approved just weeks before the DAR was issued.

Because Defendant has now failed twice under Rule 56 to show that SHIVER was suspended without pay for anything other than FMLA-protected absences, its Motion for Summary Judgment [ECF No. 48] on Plaintiff's FMLA retaliation claim in this case should be DENIED, and Plaintiff's Amended Motion for Summary Judgment [ECF No. 31] should be GRANTED. *See Wahl, supra* ("[s]ince the undisputed record evidence demonstrates . . . the reason Wahl was placed on probation and then fired was for the absences taken for protected FMLA leave, summary judgment must be entered in favor of Wahl on her claims of FMLA retaliation").

## CONCLUSION

Plaintiff has demonstrated herein that Defendant is not entitled to summary judgment under Rule 56 on any of Plaintiff's FMLA claims. Meanwhile, Defendant has admitted that Plaintiff was suspended for five days without pay due to absences that Defendant itself designated as FMLA

leave and that there are no genuine issues of material fact regarding the elements of Plaintiff's interference and retaliation claims under the FMLA. Because the undisputed facts and admissions support a finding of both liability and damages under Rule 56 and the FMLA, Defendant's Motion for Summary Judgment [ECF No. 48] should be DENIED and Plaintiff's Renewed Motion for Summary Judgment [ECF No. 42] should be GRANTED.

          Respectfully submitted,

*Christopher C. Sharp*
Christopher C. Sharp, Esq.
Fla. Bar No. 996858
E-Mail: csharplaw@aol.com
Secondary Email: chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246
Facsimile: (954) 827-8028

Dated: May 17, 2021      Counsel for Plaintiff AMY D. SHIVER

## Certificate of Service

I hereby certify that on May 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: ***Christopher C. Sharp***
Christopher C. Sharp, Esq.

## SERVICE LIST
### Case No. 20-cv-23826-Civ-COOKE/GOODMAN

Christopher C. Sharp, Esq.
Email: csharplaw@aol.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, FL 33315
Phone: (954) 909-4246
Facsimile: (954) 827-8028
Attorney for Plaintiff

Leona N. McFarlane, Esq.
Email: Leona.McFarlane@miamidade.gov
Assistant Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Phone: (305) 375-5067
Counsel for Defendant